1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ASHIT ZINZUWADIA                          No.  2:12-cv-02281-KJM-KJN

12              Plaintiff,

13        v.                                   ORDER AND FINDINGS &
                                               RECOMMENDATIONS
14   MORTGAGE ELECTRONIC
     REGISTRATION, INC., et al.,
15
                Defendants.
16

17        Plaintiff Ashit Zinzuwadia ("plaintiff"), who is proceeding without counsel and in forma

18   pauperis, filed his original complaint on September 6, 2012.[1]  (ECF No. 1.)  The undersigned

19   previously dismissed the original complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), but gave

20   plaintiff leave to file a First Amended Complaint ("FAC").  (ECF No. 6.)

21        Plaintiff filed his FAC on February 11, 2013.  (ECF No. 7.)  Thereafter, on April 11,

22   2013, the undersigned dismissed plaintiff's FAC pursuant to 28 U.S.C. § 1915(e)(2)(B) and

23   granted plaintiff leave to file a Second Amended Complaint ("SAC") within 45 days.  (ECF No.

24   11.)  Ninety days later, plaintiff had not filed his SAC.  The undersigned then issued an Order to

25   Show Cause ("OSC") as to why plaintiff's case should not be dismissed for "failure to prosecute

26   the action and failure to follow the court's order."  (ECF No. 12 at 3.)  The OSC of July 12, 2013,

27   _____

28   [1]  This case proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

                                               1

1    gave plaintiff an extension of until July 26, 2013, to respond to the undersigned's OSC and to file

2    a SAC.  (Id.)  Plaintiff filed both documents on July 26, 2013.  (ECF Nos. 13, 14.)  The SAC is

3    the pleading presently before the undersigned.  (Second Am. Compl., ECF No. 13.)

4         Pursuant to the undersigned's screening authority provided in 28 U.S.C. § 1915(e)(2), and

5    given that plaintiff has had three opportunities to allege facts plausibly supporting his potential

6    federal claims, the undersigned recommends that the SAC be dismissed with prejudice for the

7    reasons stated below.  The undersigned also recommends that the court decline to exercise

8    supplemental jurisdiction over plaintiff's potential state law claims.  28 U.S.C. § 1367(c)(3).

9    I.    BACKGROUND

10        Plaintiff's 45-page SAC contains few factual allegations.  However, it appears plaintiff

11   refinanced his home in Tracy, California, with American Mortgage Network, Inc. ("American")

12   on December 15, 2006.  (Second Am. Compl. at 1.)  During this refinancing, plaintiff alleges that

13   he was not given an opportunity to review the refinance documents prior to signing them.  (Id. at

14   5.)  Despite the notary's promise that American or Alliance Title Company would send the

15   finalized documents to him, plaintiff states that he "never received any documents" from either

16   company.  (Id.)

17        The next paragraph of the SAC, however, indicates that "plaintiff finally received a copy

18   of her [sic][2] loan application from Alliance Title in December 2010."  (Id.)  Upon reviewing the

19   loan application, plaintiff discovered that the documents indicated that his income was $9,000 per

20   month.  (Id.)  Plaintiff claims that he "did not provide these fictitious figures to the broker or

21   bank."  (Id.)  Additionally, plaintiff alleges that American changed the loan "from a simple fixed

22   interest loan to a hybrid interest only loan for the first 120 months followed by a principal and

23   interest loan for the rest of the term."  (Id. at 5.)  Plaintiff claims that this change increased his

24   monthly payments "by about 50%."  (Id.)

25        According to plaintiff, American is identified on the deed of trust as the lender and

26   Mortgage Electronic Registration Systems, Inc. ("MERS") is identified as the beneficiary of the

27   _____
     [2]   The SAC contains both masculine and feminine pronouns. For the sake of consistency and
28   because plaintiff more commonly uses masculine than feminine, the court uses masculine
     pronouns herein.

1   security.  (Id. at 6.)  Plaintiff claims that American securitized plaintiff's mortgage through

2   IndyMac Bank, Lehman Brothers, and Deutsche Bank National Trust Company ("DBNTC").[3]

3   (Id.)  According to plaintiff, DBNTC is the trustee for the security which contains plaintiff's

4   mortgage.  (Id. at 3.)  Plaintiff alleges that OneWest Bank, FSB ("OneWest") is the parent

5   company of IndyMac Mortgage Services and the "purported servicer of [p]laintiff's loan."  (Id.)

6   NDEX West, LLC ("NDEX") is a "collection agent" working on OneWest's behalf.  (Id.)  NDEX

7   is the entity foreclosing on plaintiff's property.  (Id.)

8          The SAC alleges that on October 27, 2009, NDEX recorded a notice of default

9   "describing the property with instructions that plaintiff contact OneWest Bank, FSB to stop the

10  foreclosure."  (Id. at 6.)  The SAC further alleges that on December 22, 2011, NDEX and

11  Nationwide Posting and Publication, Inc. recorded a Notice of Trustee's Sale ("NOTS") "stating

12  that the property would be sold at public auction on January 13, 2012 and the notice posted on

13  [p]laintiff's door does not include a signature or name of any authorized officer."[4]  (Id.)

14     II.    ORDER TO SHOW CAUSE

15         As described above, the undersigned's OSC of July 12, 2013, gave plaintiff until July 26,

16  2013, to both respond to the OSC and file his amended pleading.  (ECF No. 12 at 3.)  On July 26,

17  2013, plaintiff filed a response to the OSC ("Response").  (ECF No. 14.)  Plaintiff's Response

18  explains that plaintiff made an honest mistake in reading the undersigned's order of April 11,

19  2013, and explains that plaintiff did not understand that the undersigned had granted leave to file

20  ////

21  _____

22  [3]  The SAC's factual allegations touch upon on this securitization issue only briefly.  The
    securitization facts were apparently alleged in connection with plaintiff's state law wrongful

23  foreclosure claim. The undersigned does not address the securitization issue at length here, as it is
    not asserted in connection with any federal claim that could provide the basis for this court's

24  jurisdiction.

25  [4]  Curiously, the NOTS that plaintiff attaches to the SAC reflects dates different from those
    alleged in the text of his pleading.  (Second Am. Compl. at 77-78.)  Instead of a public auction on

26  January 13, 2012, the attached NOTS indicates that the sale will occur on August 15, 2012.  (Id.
    at 77.)  Likewise, the NOTS itself is dated July 18, 2012.  (Id. at 78.)  Moreover, elsewhere in the

27  SAC plaintiff alleges that the sale is "presently scheduled for August 8, 2013."  (Second Am.
    Compl. at 34.)  Needless to say, plaintiff's allegations regarding December 22, 2011, and January

28  13, 2012, are somewhat conflicting.  Regardless, these discrepancies have no impact on the
    sufficiency of plaintiff's complaint.

1   an amended pleading.  (Id.)  In light of plaintiff's pro se status and his explanation, the

2   undersigned's OSC (ECF No. 12) is discharged.

3        III.    LEGAL STANDARD

4        As explained in the undersigned's order of April 11, 2012, the undersigned is required to

5   screen complaints brought by parties proceeding in forma pauperis.  See 28 U.S.C. § 1915(e)(2);

6   see also Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc).  Pursuant to 28 U.S.C. §

7   1915(e)(2), the undersigned is directed to dismiss a case filed pursuant to the in forma pauperis

8   statute if, at any time, it determines that the allegation of poverty is untrue, or if the action is

9   frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

10   relief against an immune defendant.

11        Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a complaint

12   must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to

13   relief.  Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir.

14   2009).  A complaint should be dismissed for failure to state a claim if, taking all well-pleaded

15   factual allegations as true, it does not contain "enough facts to state a claim to relief that is

16   plausible on its face." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010)

17   (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "'A claim has facial plausibility when the

18   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

19   defendant is liable for the misconduct alleged.'"  Caviness v. Horizon Cmty. Learning Ctr., Inc.,

20   590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 556 U.S. at 678).  The undersigned accepts all

21   facts alleged as true and construes them in the light most favorable to the plaintiff; the

22   undersigned is "not, however, required to accept as true conclusory allegations that are

23   contradicted by documents referred to in the complaint, and [the undersigned does] not

24   necessarily assume the truth of legal conclusions merely because they are cast in the form of

25   factual allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks omitted).  The

26   undersigned must construe a pro se pleading liberally to determine if it states a claim and, prior to

27   dismissal, tell a plaintiff of deficiencies in the complaint and give the plaintiff an opportunity to

28   cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez, 203 F.3d

1  at 1130-31.  Plaintiff has the responsibility to allege facts to state a plausible claim for relief.

2  Iqbal, 556 U.S. at 678; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) ("bald

3  allegation of impermissible motive" was conclusory and not entitled to an assumption of truth at

4  the pleading stage).

5     IV.   DISCUSSION

6     The FAC attempted to state claims under three federal laws: violation of the Real Estate

7  Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605; violation of the Fair Debt Collection

8  Practices Act ("FDCPA"), 15 U.S.C. § 1692; and violation of the Racketeer Influenced and

9  Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961.  (ECF No. 7 at 21, 23, 28.)  The

10  undersigned determined that plaintiff failed to state a valid claim under any of these federal

11  statutes, and gave plaintiff leave to amend his pleading yet again.  (ECF No. 11 at 14.)

12     In general, the SAC alleges the FAC's same claims in much the same language.  With the

13  exception of plaintiff's RICO claim, which plaintiff essentially left unaltered despite the

14  undersigned's order (ECF No. 11 at 13-14), the SAC only slightly modifies the federal claims

15  plaintiff previously asserted.  The SAC also asserts two "new" federal claims: violation of the

16  Fair Credit Reporting Act ("FCRA"),15 U.S.C. § 1681; and violation of the Truth In Lending Act

17  ("TILA"),15 U.S.C. § 1641.[5]  Furthermore, the SAC renews plaintiff's request for a preliminary

18  injunction, although that same request was previously dismissed for the reasons stated in the

19  undersigned's order of December 28, 2012.  (ECF Nos. 1, 6 at 13.)  As discussed below,

20  notwithstanding having had three chances to do so, plaintiff has failed to sufficiently allege a

21  federal claim yet again.

22     a.   RESPA

23     The undersigned's prior order explained the reasons the FAC failed to adequately allege a

24  RESPA claim.  (ECF No. 11 at 8.)  In the FAC, plaintiff alleged RESPA violations against

25  American, OneWest, MERS, and DBNTC.  (ECF No. 7 at 21.)  With respect to plaintiff's

26  RESPA claim against American, the undersigned explained that the claim was time-barred:

27

28  [5]  Plaintiff's original complaint contained TILA allegations which were dismissed by the court.
   (ECF Nos. 1 at 31-32, 6 at 9-10.)

1    "[p]laintiff alleges that American forced him to use the services of a particular title company at

2    the time he refinanced his mortgage loan in 2006." (Id. at 8.)  Despite the FAC's failure to cite to

3    a particular section of RESPA for his claim against American, the undersigned determined that

4    the claim likely fell under section 2608 of RESPA.[6]  The undersigned then explained that "claims

5    under section 2608 must be filed within one year of the date of the alleged violation." (Id. at 9

6    (citing 12 U.S.C. § 2614).)  The undersigned concluded that "plaintiff's own allegations reveal

7    that his RESPA claim against American is time-barred" because American's alleged misconduct

8    occurred in 2006 but plaintiff did not file his action until 2012. (Id.)  The undersigned gave

9    plaintiff leave to amend his pleading to "allege a basis for delaying the commencement of the

10   one-year limitations period stated in 12 U.S.C. § 2614."

11           With respect to the FAC's RESPA claims targeting OneWest, MERS, and DBNTC, the

12   undersigned found plaintiff's complaint "insufficient for a different reason." (ECF No. 11 at 9.)

13   Plaintiff's RESPA allegations against OneWest, MERS, and DBNTC stemmed from the

14   defendants' alleged failure to "properly credit or post payments that plaintiff made on his

15   mortgage." (Id.)  The undersigned found that plaintiff failed to allege "a single *fact*" plausibly

16   suggesting "that he made certain mortgage payments that were not ultimately credited to him."

17   (Id. (emphasis in original).)  Therefore, the undersigned dismissed plaintiff's RESPA claims

18   against OneWest, MERS, and DBNTC without prejudice and gave plaintiff leave to amend. (Id.

19   at 10.)

20           In the current pleading — the SAC — plaintiff's RESPA claims differ from the RESPA

21   claims contained in the FAC and discussed above.  For instance, the SAC omits the allegation

22   that American forced plaintiff to use a certain title company in 2006.  Yet the SAC includes

23   language in favor of tolling a statute of limitations despite the fact that the undersigned's order of

24   April 11, 2013, indicated only plaintiff's allegation *against American* was time-barred. (Second

25   Am. Compl. at 29.)

26

---

27   [6]  See 12 U.S.C. § 2608(a) ("No seller of property . . .  shall require directly or indirectly . . .  that
     title insurance covering the property be purchased by the buyer from any particular title
28   company.")

                                                                    6

The SAC also omits the FAC's allegations that defendants OneWest, MERS, and DBNTC failed to "properly credit or post" mortgage payments made by plaintiff.  (ECF No. 7 at 22.)  The SAC makes no mention of such allegations.

Rather than including new substantive factual allegations to support these potential federal claims, the SAC broadly recycles the deficient RESPA claims from plaintiff's previously-dismissed original complaint.  (ECF No. 1 at 31-32.)  These claims include an assertion that a violation of RESPA is also a violation of California Financial Code section 50505, an allegation that IndyMac Mortgage Services and NDEX failed to respond to plaintiff's Qualified Written Requests ("QWR"), and finally a broad allegation that "defendants have engaged in a pattern and practice of non-compliance with" RESPA.  (Second Am. Compl. at 28-29.)  These claims are contained in paragraphs 49, 50, and 52 of the SAC and are substantially similar paragraphs 50, 51, and 52 of plaintiff's original complaint.  (Compare ECF No. 1 at 31-32 with Second Am. Compl. at 28-29.)  For the reasons discussed in the undersigned's order of December 28, 2012, which dismissed plaintiff's original complaint without prejudice, paragraphs 50, 51, and 52 fail to state a valid RESPA claim.  (ECF No. 6 at 6-7 (citing Garcia v. Wachovia Mortgage Corp., 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009) (dismissing RESPA claim without prejudice for failure to allege actual damages, because alleging only a failure to respond to a QWR is itself insufficient to "state a claim for damages.")).)  As practically nothing has changed with these paragraphs, now repackaged as paragraphs 49, 50, and 52 in the SAC, the undersigned again finds that they fail to state a RESPA claim.

The SAC also contains three new paragraphs of RESPA allegations.  (Second Am. Compl. at 28-29.)  However, none of these additional paragraphs remedy the deficiencies identified in the undersigned's order of December 28, 2012.  (ECF No. 6.)  The first additional paragraph appears to be plaintiff's attempt to clarify which defendants his RESPA claims target.  (Second Am. Compl. at 28.)  Plaintiff explains that he is unsure of the roles each defendant played in the process but, "due to the conspiratorial nature of the conduct complained of herein, and also due to [d]efendants' failure to property advice [sic] [p]laintiff as to the roles and identities of the various entities," he alleges "all [d]efendants OneWest Bank, FSB and NDEX West LLC" violated

1 │ RESPA.  (Id.)  Plaintiff offers no facts to plausibly support the conclusory assertion that

2 │ defendant's conduct was "conspiratorial."  (Id.)  Further, this unsupported "conspiracy" assertion

3 │ is not associated with any specific RESPA violation and therefore does not remedy the problems

4 │ identified by the undersigned's prior order.  (ECF No. 6 at 6-9.)

5 │ 　　　　The SAC's second additional paragraph of RESPA allegations asserts that OneWest

6 │ violated 12 U.S.C. § 2605(e)(3) "by continuing to report derogatory information to credit bureaus

7 │ Experian, Equifax and TransUnion during the 60 days they [OneWest] had to review [p]laintiff's

8 │ Qualified Written Request as required by that statute."  (Second Am. Compl. at 28.)  Plaintiff

9 │ provides no additional facts to support this claim.  At minimum, the portion of plaintiff's

10 │ statement alleging a violation of section 2605(e)(3) is conclusory and lacking factual support.

11 │ Iqbal, 556 U.S. at 678 (2009) (Courts "are not bound to accept as true a legal conclusion couched

12 │ as a factual allegation.").

13 │ 　　　　Moreover, even if OneWest did improperly continue to report credit information in

14 │ violation of RESPA, plaintiff does not allege any damages resulting from such reporting.  Instead,

15 │ plaintiff merely repeats what he alleged in his original complaint, which is that "as a direct and

16 │ proximate result of [d]efendants' failure to comply with RESPA, [p]laintiff has suffered and

17 │ continues to suffer compensable damages."  (Second Am. Compl. at 30.)  These broad allegations

18 │ of damages are insufficient to support a RESPA claim.  Sullivan v. JP Morgan Chase Bank, NA,

19 │ 725 F. Supp. 2d 1087, 1095 (E.D. Cal. 2010) (Stating that, "[e]ven under a liberal pleading

20 │ standard for harm," plaintiff's allegation that "as a result of [d]efendant's failure to comply with

21 │ RESPA, [p]laintiff has suffered and continues to suffer damages and costs of suit" did not support

22 │ plaintiff's RESPA claim.); see also Lal v. Am. Home Servicing, Inc., 680 F. Supp. 2d 1218, 1223

23 │ (E.D. Cal. 2010) ("[T]he loss alleged must be related to the RESPA violation itself . . . .

24 │ [A]llegations made under a separate cause of action are insufficient to sustain a RESPA claim for

25 │ actual damages.").  While recovery of statutory damages is possible under RESPA, "flatly

26 │ claim[ing] a pattern of noncompliance," as plaintiff does in paragraph 52 of the SAC, is not

27 │ enough to support a claim for statutory damages.  Lal, 680 F. Supp. 2d at 1223; 12 U.S.C. §

28 │ 2605(f)(1)(B) (providing statutory damages).

1   The SAC's third and final additional paragraph of RESPA allegations contains another

2   broad and conclusory allegation.  Plaintiff states:

3   > Plaintiff is informed and believes, and thereon alleges, that
    > [d]efendants violated RESPA by receiving money and/or things of
4   > value for referrals of settlement service business related to the
    > subject loan, including secret kickbacks and yield spread premiums
5   > to loan brokers which steered [p]laintiff into loans at rates and on
    > terms well above market rates and above those that [p]laintiff could
6   > have obtained absent such practices.

7   (Second Am. Compl. at 29.)  The SAC contains absolutely no supporting factual allegations that

8   would bolster this broad claim.[7]  Additionally, plaintiff offers neither factual allegations

9   describing these "kickbacks" nor an explanation as to how these alleged "kickbacks" "steered"

10  him into loans he would not otherwise have taken.  See Lane v. Vitek Real Estate Indus. Grp.,

11  713 F. Supp. 2d 1092, 1101-02 (E.D. Cal. 2010) (dismissing a RESPA claim alleging kickbacks

12  and illegal fees which "simply allege[d] the existence of secret kickbacks and lump[ed] the

13  actions of defendants together" because the claim "stops short of the line between possibility and

14  plausibility.") (quoting Iqbal, 556 U.S. at 678).

15  Therefore, the SAC fails to adequately allege a RESPA claim.  Plaintiff has failed to

16  include factual allegations to support his RESPA claim despite having multiple opportunities to

17  do so, such that further opportunities to amend the claim would be futile.  See Cahill v. Liberty

18  Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996) (district court did not abuse its discretion in

19  declining leave to amend where court determined that amendment "would have be futile").

20  Accordingly, the undersigned recommends that plaintiff's RESPA claim be dismissed.

21  ////

22  ////

23  ////

24  _____

25  [7]  Plaintiff fails to identify which section of RESPA was violated by the alleged "kickbacks."
    Nevertheless, 12 U.S.C. § 2607 is titled "Prohibition against kickbacks and unearned fees" and
    would likely apply to this aspect of plaintiff's RESPA claim.  A violation of section 2607 occurs
26  if "(1) a payment of a thing of value is (2) made pursuant to an agreement to refer settlement
    business and (3) a referral actually occurs."  Edwards v. First Am. Corp., 517 F. Supp. 2d 1199,
27  1205 (C.D. Cal. 2007) aff'd in part, rev'd in part, 610 F.3d 514 (9th Cir. 2010) (citing Culpepper
    v. Inland Mortg. Corp., 132 F.3d 692, 696 (11th Cir.1998)).  The SAC contains no factual
28  allegations supporting these elements.

  b. <u>FDCPA</u>

     The undersigned previously informed plaintiff that the FDCPA claims in his FAC were inadequately alleged.  (ECF Nos. 7 at 28-29, 11 at 11-13.)  With respect to the FAC's FDCPA claims against OneWest and NDEX, the undersigned stated that "plaintiff has not clearly alleged any facts describing the sort of harassment or abuse typically required to state a FDCPA claim, nor has he alleged that OneWest and NDEX are 'debt collectors.'"  (ECF No. 11 at 12.)  The undersigned instructed plaintiff to file an amended pleading with "factual allegations describing OneWest's alleged attempts to collect payments from him," and to separately describe "NDEX's alleged attempts to collect payments from him," as well as to describe the "alleged conduct/statements by each of these defendants." (<u>Id.</u> at 13.)  The undersigned then dismissed plaintiff's FDCPA claim without prejudice and granted leave to amend. (<u>Id.</u>)

     The SAC's FDCPA allegations are substantially similar to the deficient FDCPA allegations in plaintiff's prior pleading.  (<u>Compare</u> Second Am. Compl. at 36-37 <u>with</u> ECF No. 7 at 28-29.)  On one hand, plaintiff now alleges that OneWest and NDEX "[are] debt collectors" and defendants "state[] as much in [their] voicemails and the notices [they] issue."  (Second Am. Compl. at 37.)

     However, aside from the new allegation indicating that defendants are indeed "debt collectors," plaintiff failed to correct other deficiencies identified in the undersigned's prior order. For instance, the undersigned's prior order *also* required plaintiff to supplement his claim with factual allegations describing defendant's debt collection attempts as well as the conduct and statements of both defendants.  (<u>Id.</u> at 13 (citing <u>Kayan v. Asset Acceptance, LLC</u>, CV12-03610-JGB-FMOX, 2013 WL 1010554, at *6-7 (C.D. Cal. Mar. 14, 2013) (unpublished) (granting summary judgment for one of several defendants where plaintiff conclusorily alleged violations of various sections of the FDCPA, but did not actually "allege any facts in the [c]omplaint to support these allegations" as to that defendant, and where there was "nothing in the [c]omplaint that points to [d]efendants' use of any false or misleading representation or using unfair or unconscionable means to collect a debt from [p]laintiff.").)

////

1    In response to the undersigned's request, the plaintiff added a handful of sentences to the

2    SAC, alleging that NDEX "continue[d] to violate FDCPA 15 U.S.C. § 1692 when it continued to

3    perform debt collection activities on behalf of Defendant OneWest after it received numerous

4    dispute and validation attempts by plaintiff."  (Second Am. Compl. at 37.)  Likewise, plaintiff

5    alleges that OneWest "violated and continues to violate FDCPA 15 U.S.C. § 1692 when it

6    continued and continues to perform debt collection activities after it received numerous dispute

7    and validation attempts by plaintiff."  (Id.)  Plaintiff then states that "the exact number of

8    infractions will be provided through the discovery process."  (Id.)  Finally, plaintiff states that he

9
        [C]laims damages against Defendants OneWest and NDEX WEST
10      for the various violations of FDCPA as set forth above. The amount
        of damages of an amount to be decided at trial or in a dispositive
11      motion and any attorney fees and or related costs incurred to
        plaintiff for bringing these claims of violations of FDCPA.

12   (Id.)

13    Despite the undersigned's order directing him to do so, plaintiff's SAC does not include

14   any *factual allegations* describing defendants' alleged attempts to improperly collect debt

15   payments from him.  Instead, plaintiff sweepingly asserts that "debt collection continued" after

16   defendants received his "dispute and validation attempts."[8]  (Id.)  Even assuming "dispute and

17   validation attempts" occurred and had legal effect, the SAC *still* does not describe defendants'

18   collection attempts, conduct, or statements, ignoring the directive in the undersigned's prior

19   order.  (ECF No. 11 at 13 (citing Kayan, 2013 WL 1010554, at *6-7; Hernandez v. Cal.

20   Reconveyance Co., No. CV F 09–0251 LJO DLB, 2009 WL 464462, at *4-5 (E.D. Cal. Feb. 23,

21   2009) (unpublished) (granting defendant's motion to dismiss FDCPA claims because complaint

---

8    The statute provides that "[w]ithin five days after the initial communication with a consumer in
connection with the collection of any debt," a debt collector shall send the consumer a written
notice containing the name of the creditor to whom the debt is owed, the amount of the debt, and
certain statements outlining the consumer's rights to respond or request additional information.
See 15 U.S.C. § 1692g.  Further, "[i]f the consumer notifies the debt collector in writing within
the thirty-day period described in subsection (a) of this section that the debt, or any portion
thereof, is disputed, or that the consumer requests the name and address of the original creditor,
the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt
collector obtains verification of the debt or a copy of a judgment, or the name and address of the
original creditor, and a copy of such verification or judgment, or name and address of the original
creditor, is mailed to the consumer by the debt collector."  15 U.S.C. § 1692g(b).

11

1   lacked allegations of harassment, abuse, misrepresentations, or unfair practices in connection with

2   collecting a debt).  While plaintiff apparently intends to allege that defendants improperly

3   continued to engage in debt collection following plaintiff's "disputing" his debt pursuant to 15

4   U.S.C. § 1692g(b), plaintiff once again ignores the undersigned's order directing him to include

5   *factual allegations* supporting such a claim: if defendants allegedly continued to engage in debt

6   collection after plaintiff's "dispute and validation" attempts, *how* did defendants do so?  Without

7   supporting factual allegations, plaintiff's generalized statement that defendants "continued to

8   perform debt collection activity" is prohibitively conclusory and does not suffice to support his

9   FDCPA claim.

10       Given their conclusory nature, the SAC's additional FDCPA allegations fail to remedy

11   the deficiencies described in the undersigned's prior order, and the SAC fails to adequately allege

12   a FDCPA claim.  (ECF No. 11 at 11-13.)  Because plaintiff has repeatedly failed to include

13   factual allegations to support his FDCPA claim despite having had three opportunities to do so,

14   further opportunities to amend would be futile.  See Cahill, 80 F.3d at 339.  Accordingly, the

15   undersigned recommends that plaintiff's FDCPA claim be dismissed.

16           c.   RICO

17       The undersigned previously dismissed the FAC's RICO claim against OneWest and

18   NDEX on grounds that the supporting allegations were conclusory and did "not adequately

19   support the RICO claim."  (ECF No. 11 at 14.)  The undersigned also found that "plaintiff's bare

20   citations to criminal statutes do not satisfy the requirement of alleging predicate acts with

21   specificity."  (Id.)  The undersigned dismissed plaintiff's RICO claim without prejudice and

22   granted leave to amend and file a SAC.  (Id.)

23       The RICO claim in the SAC remains deficient.  The SAC breaks plaintiff's RICO

24   allegations into two "counts."  (Second Am. Compl. at 38.)  The first count targets OneWest.

25   (Id.)  Except for minor changes, the SAC's RICO allegations in "count one" are identical to the

26   RICO allegations in plaintiff's FAC.  (Compare Second Am. Compl. at 39-42 with ECF No. 7 at

27   23-27.)  The SAC alleges no additional facts to support the allegations in the first RICO count.

28   (Id.)  As such, plaintiff failed to follow the undersigned's prior order requiring more factual

1    support for the claim.  (ECF No. 11 at 13-14 (citing Schreiber Distrib. Co. v. Serv-Well Furniture

2    Co., Inc., 806 F.2d 1393, 1400 (9th Cir. 1986); Pineda v. Saxon Mortgage Servs., Inc., SACV08-

3    1187 JVSANX, 2008 WL 5187813, at *4 (C.D. Cal. Dec. 10, 2008) (unpublished) ("It is not

4    enough for [plaintiff] to rely on mere labels and conclusions" to establish a RICO claim, plaintiff

5    must give each defendant notice of the particular predicate act it allegedly participated in and

6    must allege each act with specificity)).)

7         Plaintiff's second RICO count again targets OneWest.  (Second Am. Compl. at 40.)

8    Similar to the SAC's first RICO count, the language in the second count is copied nearly verbatim

9    from plaintiff's FAC.  (Compare Second Am. Compl. at 39-42 with ECF No. 7 at 23-27.)  The

10   only difference between the SAC's second RICO count and the FAC's "Pattern of Racketeering

11   Activity" claim is that the SAC alleges that some of the income gained from the racketeering

12   activity "was used in acquiring an interest in, or operating, the enterprise."  (Second Am. Compl.

13   at 41.)  Like the first RICO count, the undersigned previously found that plaintiff's second count

14   failed to adequately support a RICO claim.  (ECF No. 11 at 14.)

15        In short, plaintiff has again failed to include factual allegations to support his RICO claim

16   despite having three opportunities to do so.  Accordingly, further opportunities to amend would

17   be futile, and the undersigned recommends that plaintiff's RICO claim be dismissed.  See Cahill,

18   80 F.3d at 339.

19             d.   FCRA

20        The SAC also includes a previously-unpleaded claim for violation of the FCRA under 15

21   U.S.C. § 1681.[9]  (Second Am. Compl. at 36.)  However, plaintiff's FCRA claim is deficient

22   because there is no private right of action under the subsections of the FCRA that plaintiff alleges

23   were violated.

24        Plaintiff alleges that OneWest "furnished information to one or more of the credit

25   reporting entities: Experian, Equifax and Transunion that was inaccurate or incomplete."  (Id.)

26   Plaintiff allegedly notified OneWest that he disputed his mortgage's foreclosure status.  (Id.)

27

28   _____
     [9]   Because plaintiff has not previously attempted to allege a FCRA claim, the undersigned did
     not discuss the requirements of such a claim within prior orders.

1    Plaintiff further alleges that even after repeatedly notifying OneWest of the dispute, OneWest

2    "failed to correct its information or mark the account in dispute with the three credit reporting

3    entities." (Id.) "Instead," plaintiff alleges, "[OneWest] reported the account was in foreclosure

4    even though OneWest knew that the foreclosure itself was in dispute." (Id.) Plaintiff asserts that

5    OneWest's actions ran afoul of 15 U.S.C. § 1681-2(a)(1)-(3).[10] (Id.) Furthermore, plaintiff

6    argues that OneWest's actions constitute "willful noncompliance" in violation of 15 U.S.C. §

7    1681n ("Section 1681n"). (Id.)

8           Plaintiff's FCRA claim is deficient because the provision upon which he bases his claim is

9    not actionable by private parties. Generally, Section 1681n permits civil liability for violations of

10   the FCRA. 15 U.S.C. § 1681n (stating that "[a]ny person who willfully fails to comply with any

11   requirement imposed under this subchapter with respect to any consumer is liable to that

12   consumer"). However, as explained by the Ninth Circuit Court of Appeals, 15 U.S.C. § 1681s-

13   2(c)

14           expressly provides that sections 1681n & o do not apply to any
             failure to comply with subsection (a) of this section, except as
15           provided in section 1681s(c)(1)(B) of this title … [which] permits
             certain suits by States for damages. This limitation on liability and
16           enforcement is reinforced by subsection (d) of § 1681s-2, which
             provides that subsection (a) shall be enforced exclusively under
17           section 1681s of this title by the Federal agencies and officials and
             the State officials identified in that section. Consequently, private
18           enforcement [of § 1681s-2(a)] under §§ 1681n & o is excluded.

19   Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059 (9th Cir. 2002)

20   (internal quotations omitted) (determining "whether sections 1681n and 1681o permit suit

21   against a furnisher of credit reporting information that violates the duties imposed under

22   section 1681s-2" in a case brought by a borrower against a lender for reporting the

23   bankruptcy of borrower's co-obligor to credit agencies); Gorman v. Wolpoff &

24   Abramson, LLP, 584 F.3d 1147, 1162 (9th Cir. 2009) ("Thus, [plaintiff] has no private

25   right of action under § 1681–2(a)(3) to proceed against [the furnisher] for its initial

26   _____

27   [10]  "If the completeness or accuracy of any information furnished by any person to any consumer
     reporting agency is disputed to such person by a consumer, the person may not furnish the
     information to any consumer reporting agency without notice that such information is disputed by
28   the consumer." 15 U.S.C. § 1681-2(a)(3).

                                                    14

1   failure to notify the [credit reporting agencies] that he disputed the . . . charges.") (citing

2   Nelson).

3        Accordingly, plaintiff cannot bring a FCRA claim under Section 1681n because

4   private parties are barred from bringing actions under 15 U.S.C. § 1681s-2(a)(1)-(3).[11]

5        While plaintiff alleged this FCRA claim for the first time in plaintiff's *third* attempt to file

6   a sufficient complaint, the claim lacks supporting factual allegations and seeks recovery under a

7   statute for which there is no private right of action.  (Second Am. Compl. at 36.)  Even if plaintiff

8   could amend his pleading to include more factual allegations supporting his claim, which is

9   unlikely given plaintiff's demonstrated difficulties complying with court orders directing him to

10  add factual allegations, the addition of factual allegations would not likely overcome the fact that

11  the section plaintiff bases his claim upon does not permit a private right of action.  Accordingly,

12  the undersigned recommends that plaintiff's FCRA claim be dismissed.  See Cahill, 80 F.3d at

13  339.

14        e.   TILA

15        Plaintiff attempted to include a TILA claim in his original pleading, but the undersigned's

16  order of December 28, 2012, dismissed that claim as time-barred.  (ECF Nos. 1 at 31-32, 6 at 10).

17  Subsequently, plaintiff's FAC omitted reference to any TILA claims.  (ECF No. 7 at 1-32.)

---

18  [11]  "[A] furnisher's initial failure to comply with [§ 1681s-2(a)] is not privately enforceable," but
    there is a private right of action under § 1681s–2(b), which requires a furnisher to "correct [an]

19  omission after investigating" it and finding "that the information is incomplete or inaccurate."
    Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1162, 1164 (9th Cir. 2009).  Here,

20  however, *even if* plaintiff intended to bring a claim under section 1681s–2(b) instead of under
    section 1681s-2(a), the SAC lacks sufficient factual allegations to support such a claim.  Section

21  1681s–2(b) "deals with the duties of [information] furnishers [like OneWest] after receiving
    notice from a credit agency that a consumer is disputing the accuracy of information[.]… [T]he

22  Court of Appeals has concluded that a consumer may bring an action against the furnisher of
    inaccurate information if the consumer has notified the credit agency itself."  Howard v. Blue

23  Ridge Bank, 371 F. Supp. 2d 1139, 1146 (N.D. Cal. 2005) (citing Nelson, 282 F.3d at 1060).
    Plaintiff has not alleged facts showing that he contested OneWest's reports *with the credit*

24  *agencies*, and not just OneWest itself.  Thus, even if plaintiff intended to bring a claim under
    section 1681s-2(b), such claim would lack the necessary supporting factual allegations.  See

25  Gorman, 584 F.3d at 1154 (while a private right of action is permitted for a violation of the §
    1681s–2(b) duties, those duties "arise only after the furnisher receives notice of dispute from a

26  [credit reporting agency]; notice of a dispute received directly from the consumer does not trigger
    furnishers' duties under subsection (b).");  Kirsten v. Ocwen Loan Serv., LLC, 2:13-CV-01215

27  JAM-KJN, 2013 WL 5315577, at *3 (E.D. Cal. Sept. 20, 2013) (unpublished)  (dismissing
    FCRA claim under section 1681s-2(b) when plaintiff failed to allege that "he reported his dispute

28  to a" credit reporting agency.).

15

However, in the SAC now pending, plaintiff attempts to resurrect his TILA claim. (Second Am. Compl. at 37-38.)  The SAC alleges that OneWest violated 15 U.S.C. § 1641(f)(2) by "failing to provide the name, address and telephone number of the owner of the promissory note or the master servicer of the same when [p]laintiff requested it" via a written request. (Second Am. Compl. at 38.)  The SAC further alleges that OneWest and MERS "failed to comply with 15 U.S.C. § 1641(g)(1) when MERS purportedly transferred its beneficial interest in the Deed of Trust to OneWest" and failed to notify plaintiff.  (Id.)  In addition to remaining time-barred as described in the initial screening order (ECF No. 6 at 10), other substantive deficiencies render the TILA claims subject to dismissal yet again.

        i.   Section 1641(f)(2) Allegations Are Time-Barred

The undersigned's order of December 28, 2012, dismissed plaintiff's original complaint and addressed plaintiff's TILA claim.  (ECF No. 6 at 9.)  The undersigned concluded that plaintiff's TILA claim was time-barred because the applicable one-year statute of limitations had run.  (Id. (citing 15 U.S.C. § 1640(e)).)  The SAC attempts to address this statute of limitations issue in a section titled "Tolling of Statutes of Limitation by Fraudulent Concealment" wherein plaintiff conclusorily alleges that the statute of limitations should be tolled.  (Second Am. Compl. at 4.)  This section reads as follows:

> Any applicable statutes of limitation have been tolled by Defendants' continuing, knowing and active concealment of the facts alleged herein. By virtue of Defendants' concealment and misrepresentations to Plaintiffs [sic], Plaintiffs could not and did not discover Defendants' actions.

> In the alternative, Defendants should be estopped from relying on any statutes of limitation. Defendants owed Plaintiffs an affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty.  Finally, Defendants' conduct is not barred by any statutes of limitations because Defendants' conduct constitutes an ongoing violation of Plaintiffs' rights, which continues to the present.

(Id.)

"[T]he doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period [in section 1640(e)] until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action."  King v. State of

16

Cal., 784 F.2d 910, 915 (9th Cir. 1986).  The Ninth Circuit Court of Appeals has held that equitable tolling applies "in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1045-46 (9th Cir. 2011) (internal quotations omitted).  As stated in the undersigned's order of December 28, 2012, plaintiff has not shown that he was unable to timely learn of "vital information" bearing on his TILA claim "despite all due diligence" and plaintiff's conclusory tolling language does not remedy this.  (ECF No. 6 at 9.)  "[W]hen a plaintiff fails to allege any *facts* demonstrating that the TILA violations alleged could not have been discovered by due diligence during the one-year statutory period, equitable tolling should not be applied and dismissal at the pleading stage is appropriate."  Lingad v. Indymac Fed. Bank, 682 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010) (emphasis added).

Plaintiff fails to explain what alleged material was concealed or misrepresented by defendants that delayed the filing of plaintiff's lawsuit.  Plaintiff fails to allege a single fact indicating that OneWest engaged in any "knowing and active" concealment.  While plaintiff claims that OneWest breached its "duty of full disclosure" by not giving plaintiff the contact information for the owner of the promissory note, this alleged dishonesty does not clearly bear on plaintiff's ability to *timely file his lawsuit* prior to the deadline imposed by the statute of limitations.  (Second Am. Compl. at 4, 38.)  Therefore, plaintiff has not alleged a basis for tolling, and plaintiff's section 1641(f)(2) claims remain time-barred for the same reasons discussed in the undersigned's prior order (ECF No. 6 at 9).

        ii.  Section 1641(g)(1) Notification Provisions Were Enacted After Defendants'
            Alleged Misconduct

Plaintiff alleges that "OneWest and MERS failed to comply with 15 U.S.C. § 1641(g)(1) when MERS purportedly transferred its beneficial interest in the Deed of Trust to OneWest." (Second Am. Compl. at 38.)  According to the SAC, MERS transferred "all beneficial interest in [p]laintiff's Deed Of Trust, 'together with the note or notes therein described and secured thereby, the money due or become due under said Deed of Trust'" to "IndyMac Federal Bank" on December 31, 2008.  (Id. at 7.)  OneWest, in turn, is the "surviving entity" of IndyMac Bank.  (Id.

1   at 3.)  Therefore, the transfer which plaintiff alleges gave rise to OneWest's and MERS'

2   notification obligations under section 1641(g)(1) occurred on December 31, 2008.[12]

3        Section 1641(g)(1) of TILA was effective as of May 20, 2009, nearly five months *after*

4   plaintiff alleges OneWest and MERS had a duty to notify plaintiff.  It would be unjust to hold

5   OneWest and MERS liable for a failure to adhere to a then-non-existent statute.  See Angelini v.

6   Bank of Am., CIV. 11-3011-CL, 2011 WL 2433485, at *5 (D. Or. Apr. 27, 2011) (unpublished)

7   report and recommendation adopted, 1:11-CV-03011-CL, 2011 WL 2415841 (D. Or. June 14,

8   2011) (Where, after plaintiffs alleged section 1641 violations stemming from acts prior to May

9   20, 2009, the court said "[u]nfortunately for plaintiffs, [section 1641(g)] does not apply to their

10  claims."); Eng v. Dimon, 11-3173 MMC, 2012 WL 2050367, at *1 (N.D. Cal. June 6, 2012)

11  (unpublished) ("the subsection of the statute on which Eng relies, 15 U.S.C. § 1641(g), was not

12  added to TILA until 2009 and does not apply retroactively to conduct occurring before its

13  effective date."); Bradford v. HSBC Mortgage Corp., 829 F. Supp. 2d 340, 353 (E.D. Va. 2011)

14  (stating that "nothing in TILA indicates that [section 1461(g)] should be applied retroactively,

15  and retroactive application of the provision . . .  would undoubtedly and impermissibly 'attach[ ]

16  new legal consequences to events completed before its enactment.'") (quoting Landgraf v. USI

17  Film Products, 511 U.S. 244, 269-70 (1994)).

18       Therefore, because the acts plaintiff alleges gave rise to OneWest and MERS' disclosure

19  obligations under section 1641(g)(1) occurred *before* the effective date of the statute, plaintiff has

20  not alleged facts sufficient to support his TILA claim.  Plaintiff has failed to include factual

21  allegations to support his TILA claim despite having three opportunities to do so, and leave to

22  make further amendments would be futile.  See Cahill, 80 F.3d at 339.  Accordingly, the

23  undersigned recommends that plaintiff's TILA claim be dismissed.

        f.   Preliminary Injunction

25       Despite repeated claims for compensatory and even treble damages throughout the SAC,

26  in requesting that the undersigned grant "declaratory and injunctive relief," plaintiff alleges that

27  [12]  The Assignment of Deed of Trust document attached to the SAC indicates a transfer date of
    December 18, 2008.  (Second Am. Compl. at 59.)  This inconsistency has no effect on the section
28  1641(g)(1) analysis because both dates are prior to section 1641(g)(1)'s effective date.

18

1    he "has no adequate remedy at law for the injuries currently being suffered and that are

2    threatened." (Second Am. Compl. at 42, 44.)   After stating that he "has a strong likelihood of

3    prevailing on the merits of the case," plaintiff requests a preliminary injunction "as to any action

4    to set the Subject Property for a non-judicial sale pursuant to foreclosure proceedings, and

5    secondly a permanent injunction precluding defendants from engaging in the wrongful conduct

6    identified herein in the future." (Id. at 44.)

7         Plaintiff's original complaint contained a substantially similar request for preliminary

8    injunction, using much of the same language.  (ECF No. 1 at 41-43.)  The undersigned denied that

9    request in an order issued on December 28, 2012, (ECF No. 6 at 13), which is incorporated by

10   reference here, and the undersigned recommends that the request be denied again for the same

11   reasons.

12        Furthermore, even assuming *arguendo* that plaintiff had made the showing required for

13   the requested injunction, such an injunction would seemingly be worthless given that the SAC

14   indicates that the property was scheduled to be sold at public auction on January 13, 2012.[13]

15   (Second Am. Compl. at 6.)  The undersigned is unable to prevent an event that occurred in the

16   past.

17             g.   State Law Claims

18        In addition to the federal law claims discussed above, the SAC includes a number of state

19   law claims including wrongful foreclosure; violations of California Civil Code section 2923.5; a

20   claim for "no contract"; fraudulent concealment; quiet title; and slander of title.  (Second Am.

21   Compl. at 1-42.)  However, as plaintiff has repeatedly failed to adequately state a valid claim

22   arising under federal law, the undersigned lacks subject matter jurisdiction over plaintiff's state

23   law claims.  28 U.S.C. § 1367(c)(3).  The balance of the factors of "judicial economy,

24   convenience, fairness, and comity [do] not tip in favor of retaining the state-law claims" given the

25   undersigned's recommendation that the federal claims be dismissed.  Oliver v. Ralphs Grocery

26   
_____

27   [13]   As noted above, this date may be inaccurate given the conflict between the dates in the NOTS
     attached to the SAC and the dates in the SAC itself.  (Second Am. Compl. at 34, 77-78.)

28   Regardless of which of the alleged sale dates are correct, plaintiff still appears to ask the court to
     enjoin events that have already occurred.

1  Co., 654 F.3d 903, 911 (9th Cir. 2011) (internal quotations omitted); Sanford v. MemberWorks,

2  Inc., 625 F.3d 550, 561 (9th Cir. 2010) (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343,

3  350 n.7 (1988)).  Accordingly, the undersigned recommends that the court decline to exercise

4  supplemental jurisdiction over plaintiff's state law claims.

5           e.  Further Opportunities To Amend Would Be Futile Given Plaintiff's Failures

6                To Comply With Court Orders

7           Through three iterations of his pleading, plaintiff has demonstrated an inability to

8  adequately amend his pleading and meaningfully comply with the undersigned's orders.  For

9  instance, the SAC's RESPA recycles theories and language dismissed from the original

10  complaint.  (Compare ECF No. 1 at 31-32 with Second. Am. Compl. at 28-29; see ECF No. 6 at

11  6-9.)  Likewise, the SAC's FDCPA allegations are substantially similar to the deficient FDCPA

12  allegations in the FAC, which were dismissed for lack of non-conclusory *factual allegations*

13  *describing* defendants' alleged improper debt collection activities.  (Compare Second Am.

14  Compl. at 36-37 with ECF No. 7 at 28-29; see ECF No. 11 at 11-13.)  The SAC ignores the

15  undersigned's prior orders even more brazenly with respect to plaintiff's proffered RICO claims

16  by copying, nearly verbatim, the text of previously-dismissed RICO claims from the FAC and by

17  disregarding the undersigned's prior order dismissing those claims for lack of supporting factual

18  allegations.  (Compare Second Am. Compl. at 39-42 with ECF No. 7 at 23-27; see ECF No. 11 at

19  13-14.)  Plaintiff's resurrected TILA claims fail yet again because plaintiff ignored the

20  undersigned's prior order and failed to allege *facts* supporting the tolling of the applicable statute

21  of limitations.  (Second Am. Compl. at 4, 37-38; ECF No. 6 at 9-10.)

22           In sum, plaintiff has had repeated opportunities to cure defects in his complaint and to

23  follow the undersigned's guidance about how to adequately allege claims, but plaintiff has

24  repeatedly failed to do so.  Plaintiff's continuing failures to correct deficiencies in his pleading

25  strongly indicate that further opportunities to amend would be futile.  See Cahill, 80 F.3d at 339.

26  Nothing in plaintiff's SAC suggests that plaintiff could overcome the deficiencies attendant to his

27  claims if given leave to file yet another amended pleading.

28  ////

1     V.     <u>CONCLUSION</u>

2          Accordingly, and for the same reasons described in the undersigned's prior orders (ECF

3     Nos. 6, 11), the entirety of which are incorporated herein, the undersigned finds that providing

4     plaintiff with yet another opportunity to amend would be futile.  <u>See</u> <u>Cahill</u>, 80 F.3d at 339.  The

5     undersigned recommends that plaintiff's action be dismissed, and that such dismissal be with

6     prejudice.

7          For the forgoing reasons, IT IS HEREBY ORDERED that:

8     1.     The Order to Show Cause (ECF No. 12) is discharged.

9          Further, for the foregoing reasons, IT IS HEREBY RECOMMENDED that:

10     1.     Plaintiff's Second Amended Complaint, which is effectively plaintiff's third

11     pleading, be dismissed with prejudice pursuant to the undersigned's screening authority provided

12     in 28 U.S.C. § 1915(e)(2)(B).

13     2.     The Clerk of the Court be directed to close this case and vacate all future dates.

14          These findings and recommendations are submitted to the United States District Judge

15     assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days

16     after being served with these findings and recommendations, any party may file written

17     objections with the court and serve a copy on all parties.  <u>Id.</u>; <u>see also</u> E.D. Cal. L.R. 304(b).

18     Such a document should be captioned "Objections to Magistrate Judge's Findings and

19     Recommendations."  Any response to the objections shall be filed with the court and served on all

20     parties within fourteen days after service of the objections.  E.D. Cal. L.R. 304(d).  Failure to file

21     objections within the specified time may waive the right to appeal the District Court's order.

22     <u>Turner v. Duncan</u>, 153 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57

23     (9th Cir. 1991).

24          IT IS SO ORDERED AND RECOMMENDED.

25     Dated:  December 19, 2013

26     KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

27

28